UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATHY McMAHON,

       Plaintiff,

v.                                                          CASE No. 8:12-CV-2476-T-30TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

       Defendant.

_____

REPORT AND RECOMMENDATION

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and disabled widow's benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, I recommend that the decision be affirmed.

_____

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was fifty-nine years old at the time of the most recent administrative hearing and who has a college education, has worked as a case manager, a customer service representative, and an office helper (Tr. 43, 45, 58, 60-61, 68). On July 2, 2008, the plaintiff filed a claim for Social Security disability benefits (Tr. 181).[3] Subsequently, on February 12, 2009, she submitted an application for disabled widow's benefits on her ex-husband's account (Tr. 209).[4] The plaintiff alleged that she became disabled due to battered wife syndrome and alcoholism (Tr. 237). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a _de novo_ hearing before an administrative law judge.[5] The law judge found that the plaintiff had severe impairments of depression, anxiety, dependent personality traits,

---

[3] The plaintiff also filed an application for supplemental security income payments (see Tr. 195). However, that application, which was denied, is not at issue in this matter.

[4] The plaintiff married Wayne Charles Cadman on August 27, 1982 (Tr. 43-44). The marriage ended by divorce on October 7, 1994 (Tr. 44).

[5] The first law judge in this case held hearings on November 4, 2010 (Tr. 82-93) and January 13, 2011, but did not receive any evidence (Tr. 74-81). Following that law judge's retirement, the plaintiff's case was transferred to another law judge, who conducted the pertinent hearing on May 6, 2011 (Tr. 39-73).

and alcohol dependence (Tr. 23). The law judge determined that the

plaintiff's impairments, including her substance use disorder, met the

requirements of the listings (id.). Specifically, the law judge concluded (Tr.

24) (emphasis in original):

> The claimant's mental impairments, including the
> substance use disorder, meet listings 12.04, 12.06,
> 12.08, and 12.09.
>
> ...
>
> As discussed more thoroughly below, the medical
> evidence of record indicates that the claimant has
> had *significant* issues with alcohol dependence.
> She has resided in residential treatment facilities on
> more than one occasion, and the evidence indicates
> that when the claimant is under the influence of
> alcohol she has exhibited suicidal ideation, poor
> insight and judgment, confusion, psychomotor
> retardation, etc. In that regard, the evidence
> supports a finding of marked restriction in
> activities of daily living, moderate difficulties in
> maintaining social functioning, marked difficulties
> in maintaining concentration, persistence, or pace,
> and at least one to two episodes of decompensation
> of extended duration.
>
> Because the claimant's mental impairments,
> including the substance use disorder, cause at least
> two "marked" limitations or one "marked"
> limitation and "repeated" episodes of
> decompensation, the "paragraph B" criteria are
> satisfied.

However, the law judge further found that, if the plaintiff stopped using alcohol, the remaining impairments would not have caused more than a minimal impact on the plaintiff's ability to perform basic work activities during the relevant period (Tr. 24). After discussing the evidence of record, the law judge gave the following explanation for this conclusion (Tr. 28):

> [I]n determining the extent to which any mental limitations would remain if the substance use was stopped, the undersigned has again considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria. Yet, without consideration of the claimant's alcohol dependence, the evidence shows, at best, mild restrictions/difficulties in activities of daily living, social functioning, and concentration, persistence, or pace. There is certainly no evidence of an episode of decompensation of extended duration.
>
> Because the remaining mental limitations would cause no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, they would be nonsevere if the substance use was stopped (20 CFR 404.1520a(d)(1)).

The law judge therefore concluded that the plaintiff's alcohol dependence was a contributing factor material to the determination of disability (id.). This circumstance, as the law judge pointed out (Tr. 21), requires a determination under the Social Security Act that the claimant is not under a disability. 42 U.S.C. 423(d)(2)(C). Accordingly, the law judge ruled that the plaintiff was not disabled (Tr. 29). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

A. In order to be entitled to Social Security disability benefits and disabled widow's benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A).[6] A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, the

---

[6] The definition of disability for disabled widow's benefits is the same as for the standard disability case and the five-step sequential evaluation process is applicable to disabled widow's benefits cases. See 20 C.F.R. 404.1505(a), 404.1520(a)(2).

plaintiff must show that she became disabled before her insured status expired on September 30, 1997, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. With respect to her claim for disabled widow's benefits, the plaintiff must establish that she became disabled prior to the date of her remarriage, March 13, 2003. 20 C.F.R. 404.335(e)(3)(ii).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. <u>See</u> 20 C.F.R. 404.1520. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 404.1520(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do

basic work activities.   20 C.F.R. 404.1521(a).   If there is not a severe impairment, then a claimant is deemed to be not disabled.   20 C.F.R. 404.1520(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f).   If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy.   20 C.F.R. 404.1520(g).

III.

The plaintiff attacks the law judge's decision on nine grounds. It is unreasonable to think that the law judge is so incompetent that she committed reversible error nine times.   Rather, the assertion of nine issues reflects poorly on plaintiff's counsel who did not make the effort to winnow the frivolous claims from the unmeritorious ones.   The law judge, on the other hand, did not commit any error.

The plaintiff unquestionably had a serious problem with alcohol. However, under the Social Security Act, an impairment due to that problem

cannot be the basis for an award of benefits.   The law judge reasonably concluded that, aside from that problem, the plaintiff's mental impairments were not severe, that is, they did not significantly limit the plaintiff's ability to do basic work activities.  20 C.F.R. 404.1521(a).  The plaintiff was not receiving any treatment from a psychiatrist or psychologist so that there is no meaningful evidence from the relevant period indicating a severe mental impairment, and there is certainly no evidence that would compel such a finding.  See Adefemi v. Ashcroft, supra.

The relevant evidence regarding the plaintiff's claim for Social Security disability benefits is that which has a bearing on the plaintiff's condition between June 1, 1992, the alleged disability onset date, and September 30, 1997, the plaintiff's date last insured.  With respect to the plaintiff's disabled widow's benefits claim, the relevant period ends on March 13, 2003, the date of her remarriage.  See 20 C.F.R. 404.335(e)(3)(ii). Evidence after these dates is relevant only to the extent that it sheds light on the plaintiff's condition during the period at issue.

The transcript in this case was 1,055 pages long (although a number of pages were blank because they related to records submitted about a different person).  A large majority of the records were from after March

2003. Out of all of the hundreds of pages of medical records, the plaintiff cites only two: page 655 and page 1038 (Doc. 15, pp. 4, 8, 10, 11, 12, 15, 17).[7] These two pages, as discussed below, clearly did not establish that the plaintiff had a severe mental impairment, aside from alcohol abuse.

A. The plaintiff first complains that the law judge failed to amend the plaintiff's alleged disability onset date from June 1, 1992, to April 1997 (id., pp. 1-2). This contention is frivolous.

The disability onset date is "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249 at *1. "Although a claimant's alleged onset date is the starting point for determining the disability onset date, the ALJ need not adopt that date if it is unsupported by the medical evidence." Moncrief v. Astrue, 300 Fed. Appx. 879, 880-81 (11th Cir. 2008).

The plaintiff's applications for Social Security disability benefits and disabled widow's benefits alleged a disability onset date of June 1, 1992 (Tr. 181, 210). However, in two summaries of argument submitted to the first law judge assigned to her case, the plaintiff indicated that her disability onset

_____

[7] Actually, the plaintiff cites three pages, but one of them (p. 665) is a mistake (Doc. 15, p. 8).

-10-

date was actually April 1997 (Tr. 329-30, 332-33).   This amendment apparently stems from the plaintiff allegedly losing her nursing license, which she asserts resulted in depression, as well as an inability to concentrate and focus (see Tr. 71, 329).

At the May 2011 hearing, the law judge repeatedly noted that the plaintiff had an alleged disability onset date in 1992 (Tr. 45, 46; see also Tr. 50).  While the plaintiff's attorney discussed the evidence from April 1997, neither the plaintiff nor her attorney attempted to correct the law judge's statements about the date of disability onset.  Therefore, any failure to amend the onset date cannot be blamed on the law judge.

Regardless, the plaintiff was not prejudiced by having the law judge consider whether the plaintiff became disabled in June 1992, rather than April 1997. To the contrary, the consideration of a longer period of time would seemingly increase the plaintiff's chance of being found disabled at some point during the period.

The plaintiff speculates that the law judge did not amend the alleged disability onset date to April 1997 because the law judge "felt that this would probably be an admission that there was evidence of disability in April of 1997, prior to the date last insured of September 30, 1997" (Doc. 15, p. 2).

This contention makes no sense. If the law judge had determined that the evidence established an onset date of April 1997, she was able to make that finding regardless of the original disability onset date of June 1, 1992. The law judge, however, did not make such a finding, because she did not believe that the plaintiff became disabled in April 1997.

B. In several related and overlapping issues, the plaintiff challenges the law judge's consideration of her alcohol dependence (id., pp. 3-6, 11-13). These arguments are unpersuasive.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. 423(d)(2)(C). Thus, the pertinent regulation explains (20 C.F.R. 404.1535(b)):

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current

> disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

In this connection, the Eleventh Circuit has stated that, "in disability determinations for which the medical record indicates alcohol or drug abuse, the claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination...." Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001).

The plaintiff argues that the law judge's determination that she is not disabled is erroneous because the law judge found that she had severe impairments other than alcohol dependence (Doc. 15, pp. 3-6). This contention misperceives the law judge's decision. At steps two and three of the sequential analysis, the law judge considered all of the plaintiff's impairments. The law judge found that the plaintiff had a severe combination of impairments, including alcohol dependence, and that combination of impairments satisfied the requirements of the listings (Tr. 23). As directed by the regulations (20 C.F.R. 404.1535), the law judge then considered the plaintiff's impairments as if she stopped using alcohol. The law judge determined that, absent the plaintiff's alcohol dependence, none of the

-13-

plaintiff's remaining impairments would be severe (Tr. 24-28). In other words, the law judge concluded that the plaintiff's depression, anxiety, and dependent personality traits would not have been severe if the plaintiff stopped using alcohol.

To the extent that the plaintiff suggests that the law judge should have found that her depression, anxiety, and dependent personality traits were severe apart from her alcohol dependence, such an argument is unavailing. As noted above, the law judge examined the plaintiff's functioning in the four areas identified in the disability regulations for evaluating mental disorders (Tr. 28). See 20 C.F.R. 404.1520a(c). In this regard, the law judge explained that, absent alcohol dependence, the plaintiff had "at best, mild restrictions/difficulties in activities of daily living, social functioning, and concentration, persistence, or pace. There is certainly no evidence of an episode of decompensation of extended duration" (Tr. 28). These findings demonstrate that the plaintiff does not have a severe mental impairment. See Cuthbert v. Astrue, 303 Fed. Appx. 697, 699 (11th Cir. 2008); 20 C.F.R. 404.1520a(d)(1). The plaintiff has not shown that the evidence compels a contrary finding. See Adefemi v. Ashcroft, supra.

As indicated, the plaintiff cites only two pages of medical records. This is despite the fact that the Scheduling Order and Memorandum Requirements provided that any challenge to the law judge's decision "must be supported by citations to the record of the pertinent facts" (Doc. 12, p. 2). Those two pages (out of hundreds) do not even come close to showing a severe mental impairment. To the contrary, they underscore the remarkable weakness of the plaintiff's claims.

One of the pages is an April 24, 1997, letter by Donna Roberts, a licensed mental health counselor, addressed to the Academic Regulations Committee at the University of South Florida (Tr. 655). The entire body of the letter stated (id.):

> Cathy Ringle has been in counseling with me since April, 1996. She was doing well until the first week in April, 1997, when a crisis occurred. Her stress made it difficult for her to continue to concentrate on her class work and she found it necessary to withdraw from her classes.
>
> I hope that you will consider this emotional event in her life and allow her to continue as a student in good standing.
>
> Please let me know if you need additional information.

While acknowledging that Roberts's letter cannot establish the existence of a medically determinable impairment because she is not an acceptable medical source (see 20 C.F.R. 404.1513(a)), the plaintiff asserts that the report "is significant with regard to as to how the impairment would affect the ability to function or perform work" (Doc. 15, p. 14). Thus, the plaintiff argues that Ms. Roberts's letter is evidence of her problems with depression and concentration, as well as her inability to perform substantial gainful activity on a sustained basis (id., pp. 14-15).

The plaintiff reads far more into Roberts's letter than is there. Thus, the letter does not even mention depression or decreased concentration. Further, the letter does not indicate the nature of the crisis, whether it concerned a financial matter, a family matter, the loss of a nursing license, or a relapse with alcohol. Moreover, the letter did not set forth any functional limitations from the situation. In addition, the letter is inconsistent with the requirement that the condition continue for at least twelve months. Roberts clearly thought that the plaintiff was capable of returning to school since she asked that the plaintiff be allowed "to continue as a student in good standing" (Tr. 655).

The plaintiff also relies (unpersuasively) on a July 2001 progress note from an ARNP at Operation PAR (Doc. 15, p. 15). Following detoxification treatment at Operation PAR, the plaintiff was treated by a nurse practitioner. On July 3, 2001, the nurse practitioner met with the plaintiff for fifteen minutes (Tr. 1038). The progress note from this meeting indicates that the plaintiff was "doing well," sober, less anxious and worrisome, and working for a mortgage company (id.). The diagnosis included alcohol dependence in early remission and major depression in "full remission" (id.). The plaintiff was to continue taking Zoloft (id.).

A nurse practitioner is also not recognized as an acceptable medical source. 20 C.F.R. 404.1513(a). Consequently, her note cannot establish a medically determinable impairment. Id.

The plaintiff argues that the Operation PAR progress note is significant because it shows that "the last job that [the plaintiff] attempted reflected sobriety and that the job she had could not be performed due to problems with depression and anger resulting in concentration problems" (Doc. 15, p. 15). However, the note does not say that, or anything like that. Contrary to the plaintiff's assertion, the treatment note reflects that the plaintiff was "doing well" and "enjoys work" (Tr. 1038). In fact, the plaintiff

was "hoping to get permanent status" with the mortgage company (id.). And it says that the plaintiff's major depression was in "full remission" (id.).

These two pages, which were the only medical records cited, patently do not support a finding that the plaintiff had a severe mental impairment during the relevant period. Of course, even if they did, that would not be sufficient. Rather, the plaintiff must demonstrate that they compel a finding of a severe mental impairment. Adefemi v. Ashcroft, supra. These two pages certainly do not show that.

The plaintiff asserts that the law judge failed to offer any specific reasons for finding that her depression, anxiety, and dependent personality traits would not be severe if she stopped using alcohol (Doc. 15, p. 4). This assertion is incorrect. After a lengthy discussion of the medical evidence, the law judge stated (Tr. 28):

> [T]he medical evidence as a whole fails to show that the previously established medically determinable impairments, aside from alcohol dependence, caused more than a minimal limitation in the ability to perform basic work activities. The evidence is limited, and that evidence which is available noted many intact mental status findings (particularly during periods after a detoxification program was completed). Despite the claimant's allegations, there is simply nothing corroborative to support allegations of, in particular, disabling

panic attacks. Little to no evidence shows such complaints during the relevant periods.

In addition, the law judge noted that an Operation PAR discharge note from June 2001 shows that the plaintiff had a global assessment of functioning ("GAF") score of 80 after 30 days without substance use (Tr. 27, 1020-21). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 71-80 means that, "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors" and reflect "no more than slight impairment in social, occupational, or school functioning." (id.).

The record also contains other evidence supporting the law judge's conclusion. Thus, a September 1996 letter from Belinda Darcy, the director of administrative services at Operation PAR, states that the plaintiff "appears to have a very positive outlook on her recovery" (Tr. 800). The plaintiff also graduated from nursing school, passed her boards, and began taking classes at the University of South Florida (id.). In May and July 2001, the plaintiff reported feeling less anxious, worrisome, and depressed (Tr.

1038-39). Also, the plaintiff worked at a mortgage company on a temporary basis (id.).

In support of her argument, the plaintiff points to the law judge's statements that the plaintiff "was incapable of gainful employment secondary to the effects of battered wife syndrome" and her "[s]tress and fear reportedly cause [anxiety] attacks to occur" (Doc. 15, p. 4; see Tr. 25). These statements, however, are merely a summary of the plaintiff's allegations (Tr. 25). As discussed below, the law judge reasonably determined that the plaintiff's subjective allegations were not entirely credible.

The plaintiff asserts further that it "is simply not the case" that her impaired functioning is solely due to alcohol dependence (Doc. 15, pp. 11-13). Thus, the plaintiff suggests that her functioning is also affected by her depression and difficulty concentrating, as well as a battered wife syndrome (id.).

In order to prevail, however, the plaintiff must show not only that she had mental impairments, but that she had functional limitations from her mental impairments. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment

on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir.

2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)).

In other words, it is the functional limitations that determine disability.

Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v.

Bowen, supra.   Here, the plaintiff makes no attempt to show how her

depression, battered wife syndrome, and concentration problems create a

specific functional limitation.

     Pointing to her hearing testimony (Tr. 53), the plaintiff contends

that her drinking was merely a coping mechanism for the abuse she

experienced in her first marriage, which ended by divorce on October 7, 1994

(Doc. 15, p. 13). This assertion is unavailing.  In the first place, the record

reflects that the plaintiff continued to have problems with alcohol well

beyond her divorce in 1994. Furthermore, as explained below, the law judge

considered the plaintiff's testimony, but reasonably concluded that the

plaintiff's subjective allegations were not credible to the extent that they were

inconsistent with a finding of no severe impairment or combination of

impairments (Tr. 26).

     C. The plaintiff argues that the law judge prematurely ended the

sequential evaluation process (Doc. 15, pp. 7-11).  More specifically, the

plaintiff complains that the law judge failed to make any findings regarding the plaintiff's residual functional capacity and steps four and five of the analysis. This argument completely misunderstands the law judge's decision.

The law judge concluded that all of the plaintiff's mental impairments, including alcohol dependence, were severe impairments at step two of the sequential evaluation, and that those impairments met listings at step three, thereby warranting a finding of disabled. Accordingly, the issues of residual functional capacity and the ability to perform work at steps four and five were never reached.

The law judge then disregarded the plaintiff's alcohol dependence in accordance with 42 U.S.C. 423(d)(2)(C) and 20 C.F.R. 404.1535(b). The law judge concluded in that event that, at step two of the sequential analysis, the plaintiff did not have a severe impairment and, accordingly, stopped the analysis because that determination resulted in a finding of not disabled. Therefore, the law judge properly did not consider the plaintiff's residual functional capacity, which precedes step four, or her ability to perform jobs at steps four and five.

In a related argument, the plaintiff raises an issue regarding the testimony of a vocational expert (Doc. 15, pp. 9-11). This contention is also frivolous.

At the hearing, the law judge asked certain questions of the vocational expert in order to develop the evidence. That evidence, however, never became relevant.

The regulations state that a vocational expert's testimony is relevant at the fourth and fifth steps of the sequential analysis when the question becomes whether a claimant with a severe impairment has the residual functional capacity to perform past relevant work or other work in the national economy. 20 C.F.R. 404.1560(b)(2), 404.1566(e). Because the law judge found at step two that the plaintiff had no severe impairments or combination of impairments without her alcohol dependence, the law judge had no occasion to consider the vocational expert's testimony.

D. The plaintiff trots out, at issue number VII, the frequently asserted contention that the law judge did not properly assess the medical opinions of record (Doc. 15, pp. 13-15). In this case, the contention is frivolous because there are no medical opinions of record.

There is no indication in the record that during the relevant period the plaintiff was being treated, or even was examined, by a psychiatrist or psychologist. Consequently, there is nothing in the record that looks even remotely like an opinion from such a provider regarding the plaintiff's mental status setting forth any functional limitations. Moreover, in her argument the plaintiff does not identify any opinion from a psychiatrist or psychologist that the law judge should have considered, but did not (id.).

The only provider that the plaintiff mentions is Roberts (id., p. 14). As indicated, under the regulations, she is not an acceptable medical source. 20 C.F.R. 404.1513(a). Moreover, as explained, her letter of April 24, 1997, cannot reasonably be considered a medical opinion. Nevertheless, it is appropriate to point out that the law judge expressly considered that letter in her decision (Tr. 27).

E. As her next issue, the plaintiff complains that the law judge erroneously dismissed her subjective complaints (Doc. 15, pp. 15-17). This contention also is unavailing.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry

-24-

v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and she referred to the pertinent regulations and Social Security rulings (Tr. 25). Moreover, she set out the appropriate standard (id.). She even cited Landry (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In her credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's subjective complaints. Specifically, the law judge stated (Tr. 26):

> If the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or combination of impairments for the reasons explained below.

After discussing the medical evidence relevant to the plaintiff's claim for disability benefits, the law judge explained (Tr. 27) (emphasis in original):

> [I]t is quite apparent from the medical evidence alone that, up until the approximate point in which insured status for Title II benefits on the claimant's own record expired, the claimant was exhibiting significant problems, but these were always tied to alcohol dependence. The care that was sought from the alleged onset date to this period can also only be described as infrequent, and oftentimes on examination the claimant was still fully alert and oriented, cooperative, and in no apparent jeopardy of harming herself or others. The claimant's activities also show that she was not only in college, but graduated from college too.

The law judge also considered the evidence relevant to the plaintiff's claim

for disabled widow's benefits (id.). In this connection, the law judge said (Tr.

27-28) (emphasis in original):

> Aside from this brief period of care [in 2001], there is then no evidence of any follow-up treatment prior to the date of remarriage (March 13, 2003). Therefore, the undersigned opinion as to the quality of the evidence for this time period too is consistent with that which is already noted above. In fact, the medical evidence as a whole fails to show that the previously established medically determinable impairments, aside from alcohol dependence, caused more than a minimal limitation in the ability to perform basic work activities. The evidence is limited, and that evidence which is available noted many intact mental status findings (particularly during periods after a detoxification program was completed). Despite the claimant's allegations, there is simply nothing corroborative to support allegations of, in particular, disabling panic attacks. Little to no evidence shows such complaints during the relevant periods.
>
> Moreover, the claimant's subjective credibility is further damaged by the fact that, while she alleges many physical health issues, she has failed to show even the presence of a medically determinable, let alone severe, physical impairment. Likewise, while the claimant alleges limitations from side effects from medications, there is no indication within the file of reports to doctors during the period at issue regarding these claims.

This explanation is more than adequate to discount the plaintiff's subjective complaints. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006). Moreover, it is supported by substantial evidence.

While the plaintiff quibbles with the law judge's determination, her petty objections are unpersuasive. In all events, there is nothing in the plaintiff's argument that would compel a finding that the plaintiff's subjective complaints are entirely credible. Adefemi v. Ashcroft, supra.

F. Finally, the plaintiff contends that her case should be remanded because the law judge failed to conduct the hearing within the requirements of due process (Doc. 15, pp. 18-19). Specifically, the plaintiff asserts that the law judge acted in an adversarial manner, interrupted the plaintiff's testimony, and failed to address the circumstances which led to the plaintiff's absence from school in 1997 and the problems thereafter. This contention is patently meritless, if not frivolous.

In the first place, because the plaintiff tended to ramble, the law judge's interruptions were meant to focus the testimony being presented. For example, the following exchange took place when the plaintiff's attorney

inquired about the plaintiff's enrollment at the University of South Florida
(Tr. 58):

> Q [Attorney]: Before that occurred, had you gone to USF in St. Petersburg?
>
> A: I was going – I started my classes, my bachelor's of nursing in Tampa. I was a Tampa student. My second term I came over to St. Petersburg, again, because of the distance. That's a hike. Going over to East Tampa. That's a real hike. And so I end up in the same group, here I am with the old students from JC [junior college], I walked into the class and my gut, I got sick. I should have ran. I should have just ran. I should have not stayed in that group.
>
> ALJ: Let me just try to shorten this a little bit.
>
> Q [ALJ]: How many years of college did you successfully finish between 1992 and 1997? You finished your college degree in nursing, is that right?
>
> A: AD [sic]. Yes.
>
> Q: Well, you finished a degree in nursing from 1992 to, sometime between 1992 and 1997, is that right?
>
> A: In 1995. Yes, ma'am.
>
> Q: All right. And I don't want to hear about the crowds you got into and what caused it, I just want to know about your condition....

Subsequently, following the plaintiff's answer to a question

about her work at a call center, the law judge said (Tr. 64):

> I want to wind this down just as fast as we can. I
> have to look at what's in the record. [The plaintiff]
> has had almost an hour here telling us about her
> jobs and that kind of thing. Let's kind of wind it
> up here in a little bit.

Nevertheless, as the Commissioner correctly observes (Doc. 16, p. 19), the

law judge allowed the questioning to continue and the plaintiff was able to

provide further testimony about her work history and impairments (see Tr. 64-

67). Importantly, plaintiff's counsel did not make any objection to the law

judge that he was being prevented from eliciting testimony. To the contrary,

before plaintiff's counsel made a closing statement, which the law judge

permitted, the following exchange occurred (Tr. 70):

> ATTY: ... I thank you for letting me examine Ms.
> McMahon as you did --
>
> ALJ: That's what I'm here for.
>
> ATTY: I thank you for doing that.

In light of these remarks at the end of the hearing, it is disingenuous for the

plaintiff to assert that the law judge violated due process by cutting her

presentation short.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain any error, reversible or otherwise. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: NOVEMBER  5, 2013

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).